IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DELTA AIRLINES, INC.          :          CIVIL ACTION
                              :
          v.                  :
                              :
CHIMET, S.p.A.                :          NO. 07-2898

MEMORANDUM

Bartle, C.J.                                    December 19, 2008

Plaintiff Delta Airlines, Inc. ("Delta") brings this declaratory judgment action in connection with the loss of approximately $4 million in platinum which defendant, Chimet, S.p.A. ("Chimet"), had shipped via the plaintiff from Milan, Italy to Philadelphia, Pennsylvania on April 23, 2007.  Chimet is an Italian corporation with its principal place of business in Arezzo, Italy.  Delta seeks a declaration that its liability with respect to the loss of the platinum is limited pursuant to Article 22(3) of the Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on May 28, 1999 (the "Montreal Convention").

Now pending before the court is the motion of Chimet to dismiss for forum non conveniens.[1]

---

1.  On July 25, 2008, Delta filed a motion for summary judgment, which is being held in abeyance pending resolution of this motion to dismiss for forum non conveniens.

I.

The following facts are undisputed unless otherwise
noted.  Chimet is in the business of refining precious metals,
including the platinum at issue, which was to be shipped and sold
to Johnson Matthey, Inc., a company located in Pennsylvania.[2]
Several Italian businesses assisted in shipping the platinum.  On
April 20, 2007, Chimet retained Arexpress S.r.l. ("Arexpress"),
an Italian company located in Arezzo, to execute the necessary
transportation contracts and customs clearances.  Arexpress, in
turn, engaged Securpol Vigilantes ("Securpol"), another Italian
company with its principal place of business in Arezzo, to
transport the platinum from Chimet's Arezzo factory to Vicenza,
Italy.  In Vicenza, the platinum was delivered to Vicenza Sped,
an Italian company with its principal place of business in
Vicenza and an agent for the International Air Transport
Association.  The parties dispute whether Vicenza Sped is also an
agent of Delta.  Vicenza Sped transported the platinum to
Malpensa Airport in Milan where it was consigned to Malpensa
Logistica Europea S.p.A. ("M.L.E."), an agent of Delta.

Upon delivery to M.L.E., Vicenza Sped issued to Delta
an air waybill and a delivery receipt for the platinum.  The
delivery receipt generated by Vicenza Sped, dated April 21, 2007,
is in Italian and lists as the destination:  M.L.K. Malpensa.
Under a column that appears to be labeled "I.N.," there is

---

2.  On November 10, 2008, by agreement of the parties, the court
dismissed defendant Johnson Matthey without prejudice.

-2-

written "€3,050,000.00."  There is a handwritten notation on the
delivery receipt and a signature but neither Chimet nor Delta was
able to explain at oral argument what the notation means or who
signed the receipt.

Air waybill number 006-4899-1622, also dated April 21,
2007, lists the shipper's name and address on the air waybill as:

> VICENZASPED
> INT.AC.SRL
> VIA ROSSATO,
> 20-22
> VICENZA
> ITALLIA P/C
> CHIMET SPA

Johnson Matthey, Inc. is listed as the consignee and
VicenzaSped Int.Agency SRL is listed as the issuing carrier's
agent name.  "N.I.L." is entered in the box on the air waybill
titled "Amount of Insurance" and "NVD" is typed in the boxes
titled "Declared Value for Carriage" and "Declared Value for
Customs."[3]  Under a column titled "Nature and Quantity of Goods,"
the letters "VAL VAL VAL VAL" are typed.  The parties dispute the
meaning and import of these letters.

On May 8, 2007, Chimet was informed that the platinum
never reached Johnson Matthey.  The parties concede that the
platinum arrived safely in Philadelphia but was stolen while
being stored in a cargo building at the airport.

---

3.  Delta asserts that "NVD" means "No Declared Value."  Chimet
does not know what "NVD" means.

II.

A district court may grant a motion to dismiss on forum non conveniens grounds where "an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would 'establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" Windt v. Qwest Communic'ns Int'l, Inc., 529 F.3d 183, 189 (3d Cir. 2008).

The burden of persuasion as to all elements of the forum non conveniens analysis rests on the defendant. Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43-44 (3d Cir. 1988) ("Lacey I"). Although it is clear that the defendant "must provide enough information to enable the District Court to balance the parties' interests," Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981), our Court of Appeals has noted that "it is unclear from Piper how much detail by a moving party is required." Lacey I, 862 F.2d at 44. The level of detail required will depend on the facts of the case. Id.

A defendant bringing a motion to dismiss on forum non conveniens grounds must initially establish that an adequate alternative forum exists. Lacey v. Cessna Aircraft Co., 932 F.2d 170, 180 (3d Cir. 1991) ("Lacey II"). To meet this standard, the alternative forum must be one where the defendant is amenable to

-4-

process, and the remedy available must be adequate.  <u>Piper</u>
<u>Aircraft Co. v. Reyno</u>, 454 U.S. 235, 254 (1981).

      Once an adequate alternative forum is shown to exist,
the defendant must then demonstrate that the balance of the
public and private interest factors identified by the Supreme
Court "tips decidedly in favor of trial in the foreign forum."
<u>Lacey</u>, 932 F.2d at 180.  Our Court of Appeals has cautioned that
if, on balance, the factors are "in equipoise, or even if they
lean only slightly toward dismissal, the motion to dismiss must
be denied."  <u>Id.</u>

      In <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508 (1947),
the Supreme Court articulated the private and public interest
factors that should guide the forum non conveniens analysis.
Factors relevant to the private interest of the litigant include:

> the relative ease of access to sources of
> proof; availability of compulsory process for
> attendance of unwilling, and the cost of
> obtaining attendance of willing, witnesses;
> possibility of view of premises, if view
> would be appropriate to the action, and all
> other practical problems that make trial of a
> case easy, expeditious and inexpensive.

<u>Id.</u>

      The public interest factors that should be examined
include any administrative difficulties for the court resulting
from court congestion, the "local interest in having localized
controversies decided at home," the interest in having a foreign
court apply its own law and concomitant avoidance of problems
regarding the application of foreign law, and "the unfairness of

burdening citizens in an unrelated forum with jury duty."  Piper,
454 U.S. at 241 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501,
508 (1947)).

        We must initially determine whether Italy is an
adequate alternative forum for the parties' dispute.  Windt, 529
F.3d at 190; Lacey I, 862 F.2d 43.  In Piper, our Supreme Court
explained that this factor is normally satisfied where the
defendant is amenable to process in the alternative forum.  454
U.S. at fn. 22.  It is not met in the "rare circumstances" where
the remedy offered in the alternative jurisdiction is
"unsatisfactory."  Id.  Chimet, an Italian corporation with its
principal place of business in Italy, is amenable to process
there.  Additionally, Delta does not contend that the remedy
offered in Italy for disputes regarding application of Article
22(3) of the Montreal Convention, to which Italy is a signatory,
is "unsatisfactory."  Thus, we conclude that Italy is an adequate
alternative forum.

        Next, we must consider the amount of deference to be
accorded Delta's choice of the Eastern District of Pennsylvania
as the forum.  Windt, 529 F.3d at 190.  Chimet asserts that
Delta's choice of forum deserves no deference because:  (1) Delta
filed this anticipatory declaratory judgment action as a means of
"wrestling the choice of forum from the natural plaintiff"; and
(2) Delta is a Delaware corporation and, therefore, Pennsylvania
is not its home forum.  Chimet is correct that Delta is a
Delaware corporation with a principal place of business in

-6-

Georgia.  However, contrary to Chimet's contention, Delta has filed suit in its home forum, which is the United States. Adelson v. Hananel, 510 F.3d 43, 53 (1st Cir. 2007). Accordingly, we accord the plaintiff's choice of forum considerable deference.  Lony v. E.I. Du Pont de Nemours & Co., 935 F.2d 604, 609 (3d Cir. 1991).  Nevertheless, we note that a plaintiff's choice of its home forum is not always dispositive, and United States citizens may sometimes be required to litigate in foreign courts.  Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 81 F.3d 1224, 1232 (2d Cir. 1996).

We now balance the public and private interest factors enunciated by the Supreme Court in Gilbert to determine whether trial in the "chosen forum would result in oppression or vexation to the defendant out of all proportion to the plaintiff's convenience[.]"  Windt, 529 F.3d at 190.

The first private interest factor to be considered is the parties' relative ease of access to sources of proof and the availability of witnesses in the United States versus Italy. Lacey I, 862 F.2d at 46.  In analyzing this factor, we must "scrutinize the 'substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant to, the plaintiff's cause of action and to any potential defenses to the action."  Lacey I, 862 F.2d at 46.  Both parties agree that the crux of their dispute is whether Chimet or its representatives declared the value of the platinum as $4 million

upon its delivery to Delta in Milan, Italy and whether it paid a
supplementary sum for the shipment.  Without a declaration of
value and payment of a supplementary sum, Chimet is severely
limited to what it may collect from Delta as set forth in Article
22(3) of the Montreal Convention:

> In the carriage of cargo, the liability of
> the carrier in the case of destruction, loss,
> damage or delay is limited to a sum of 17
> Special Drawing Rights per kilogramme, unless
> the consignor has made, at the time when the
> package was handed over to the carrier, a
> special declaration of interest in delivery
> at destination and has paid a supplementary
> sum if the case so requires.  In that case
> the carrier will be liable to pay a sum not
> exceeding the declared sum, unless it proves
> that the sum is greater than the consignor's
> actual interest in delivery at destination.

Convention for the Unification of Certain Rules for International
Carriage by Air, Done at Montreal on 28 May 1999, art. 22, 1999
WL 33292734.

The arguments of the parties on the motion to dismiss
for forum non conveniens are accordingly framed by these two
issues.  However, the parties vigorously dispute whether evidence
outside of the air waybill is admissible and probative of whether
a declaration of value was made and a supplementary sum paid.

Delta claims the entry of "NVD" or "No Declared Value"
on the air waybill under "Declared Value for Carriage" is
evidence that no special declaration of value was made and
further claims that the air waybill manifests that no
supplemental sum was paid.  Importantly, Delta claims the air
waybill is dispositive of the parties' dispute as to whether the

-8-

Montreal Convention's limitation of liability provision applies
and that no discovery is necessary.  Chimet counters that
discovery outside of the air waybill and delivery receipt is both
permissible and necessary.  Specifically, it contends that
discovery regarding the delivery receipt, which indicated the
platinum's value of over €3 million, the instructions and
representations which may or may not have been given by Chimet's
representatives, and the parties' practices and procedures, among
other things, is necessary to determine whether a "special
declaration of interest in delivery at destination" was made and
whether a "supplementary sum" was paid.  Thus, Chimet contends
that the parties' dispute cannot be resolved solely by reference
to the air waybill.

> Article 11 of the Montreal Convention, entitled
"Evidentiary Value of Documentation," supports Chimet's position.
It provides:

> 1.  The air waybill or the cargo receipt is
> *prima facie* evidence of the conclusion of the
> contract, of the acceptance of the cargo and
> of the conditions of carriage mentioned
> therein.
>
> 2.  Any statements in the air waybill or the
> cargo receipt relating to the weight,
> dimensions and packing of the cargo, as well
> as those relating to the number of packages,
> are *prima facie* evidence of the facts stated;
> those relating to the quantity, volume and
> condition of the cargo do not constitute
> evidence against the carrier except so far as
> they both have been, and are stated in the
> air waybill or the cargo receipt to have
> been, checked by it in the presence of the
> consignor, or relate to the apparent
> condition of the cargo.

-9-

Convention for the Unification of Certain Rules for International
Carriage by Air, Done at Montreal on 28 May 1999, art. 11, 1999
WL 33292734.

Pursuant to Article 11, both the air waybill and the
delivery receipt are simply prima facie evidence of the
conditions of the contract.  Prima facie evidence may be used to
establish a fact "unless contradictory evidence is produced."
BLACK'S LAW DICTIONARY 579 (7th ed. 1999).  Thus, the Montreal
Convention contemplates the introduction of evidence outside of
the air waybill and the delivery receipt.  Here, contrary to
Delta's assertions, evidence outside of the air waybill for the
platinum may be introduced pursuant to Article 11 of the Montreal
Convention.  Such evidence is particularly necessary because the
air waybill, which states "NVD" or "No Value Declared," and the
delivery receipt, which ascribes a value of over €3 million euros
for the platinum, appear to conflict.  Accordingly, discovery is
necessary to resolve this dispute justly and fairly under the
Montreal Convention.

Delta relies on Vigilant Ins. Co. v. World Courier,
Inc., No. 07-194, 2008 WL 2332343 (S.D.N.Y. June 4, 2008) for the
proposition that no discovery outside of the air waybill is
necessary to decide a lawsuit involving a dispute under Article
22(3) of the Montreal Convention.  That case, however, does not
help Delta.  Although the court held that the plaintiff's
recovery was limited by Article 22(3) because it failed to make a

declaration of value on the air waybill, the court noted that the
parties did not submit any additional evidence on the subject.
This suggests the court would have considered such evidence if
offered.  The court reasoned as follows:

> The liability limitations of the Montreal
> Convention apply to the shipment in this
> case, and regulate plaintiff's recovery.  It
> is undisputed that FCS-UK failed to make a
> special declaration of interest and did not
> pay a supplementary sum. [citation omitted].
> The portions of the Waybill requesting a
> declared value for carriage and surcharge are
> blank. [citation omitted].
>
> Plaintiff argues that FCS-UK did pay a
> surcharge, because World Courier's rates are
> higher than those of other shippers.
> [citation omitted].  However, plaintiff
> offers no evidence to support this conclusory
> statement. [citation omitted].  Moreover,
> plaintiff cites to no rule of law or
> regulation that requires all shippers to
> charge the same rates, so a higher rate
> charge for a shipment does not constitute a
> surcharge. [citation omitted].

Id. at *6.

In Vigilant the only evidence before the court was the
air waybill, and apparently no other discovery was sought.  In
this case, much is disputed, and Chimet properly seeks to take
discovery and clear up unanswered questions about what happened
when the platinum was transferred from Chimet to Delta in Italy.

All of the evidence regarding the communications
between Chimet and Delta, the meaning of the term "VAL VAL VAL
VAL," and whatever documentary evidence exists outside of the air

waybill and the delivery receipt is in Italy.[4]  Chimet will need
the depositions of a number of Italian citizens to resolve the
issue whether a declaration of value for the platinum was made
and whether a supplementary sum was paid.  These deponents are
not under Chimet's control, and all of them reside in Italy and
speak only Italian.[5]  They are also outside the subpoena power of
this court.  In addition, the parties will need to retain a
translator for their depositions and for any trial testimony.
The translation, lodging, and transportation expenses will be
costly and may be saved if this litigation proceeds in Italy.
Windt, 529 F.3d at 194.

          Furthermore, all of the documentary evidence, other
than the waybill and receipt, memorializing the involvement of
Chimet, Arexpress, Securpol Vigilantes, Vicenza Sped, and

---

4.  Chimet contends that the term "VAL VAL VAL VAL" is evidence
that it declared the value of the platinum.

5.  Chimet relies on the affidavit of Roberto Alboni, its counsel
in Italy.  According to Mr. Alboni, Chimet declared the value of
the platinum as €3,050,000 on the delivery receipt and the air
waybill lists the additional transportation costs that Chimet
paid.  Mr. Alboni posits that Chimet will need to depose the
following witnesses, all of whom are Italian citizens with no
contacts with the United States, to further demonstrate that it
made a declaration of value and paid a surcharge:  (1) Mr.
Manuele Nocenti, of Arexpress, who arranged for the
transportation and customs clearance of the platinum and
instructed Securpol and Vicenza Sped regarding the shipment; (2)
Mrs. Stefania Criscuolo and Lavinia Damian, of Vicenza Sped, who
were aware of the conditions in which the air waybill and
delivery receipt were completed and provided to Delta; (3)
Messrs. Matteo Vencato and Corrado Vezzaro, on behalf of Vicenza
Sped, who delivered the platinum to an agent of Delta and
received, in return, a Merchandise Delivery Receipt.

Malpensa Logistica Europea S.p.A. is located in Italy and will be
in Italian.  To the extent these documents contain relevant
evidence, they will need to be translated if this litigation
proceeds in the United States.

        The fact that the platinum was stolen from a cargo
storage area at the Philadelphia Airport in this District is of
no moment.  Indeed, for purposes of this lawsuit, it does not
matter where the platinum was stolen, whether in Philadelphia or
elsewhere in the United States or over the Atlantic Ocean.  The
key events occurred in Italy with the transfer of the platinum to
Delta.

        Under the forum non conveniens analysis of the private
interest factors, we "must also consider other factors that lead
to the expeditious and efficient resolution of the litigation."
Id. at 195.  This includes Chimet's ability to join Arexpress,
Securpol Vigilantes, Vicenza Sped, and Malpensa Logistica Europea
S.p.A. in its litigation with Delta, thereby avoiding the need
for duplicitous proceedings.  In Windt, our Court of Appeals
reasoned that a party's "stated desire" to pursue contribution
claims against responsible third parties in the Netherlands
favored dismissal of the action.  Id.  Similarly here, Chimet's
"stated desire" to join the additional Italian third parties
favors dismissal in the interest of expeditiously resolving all
of these matters in one proceeding.  Moreover, it would not be
unfair to Delta to try this matter in Italy where it has a
significant presence.

-13-

Turning to the public interest factors, we find that the administrative difficulties flowing from court congestion is a neutral factor.  The parties have not shown that one forum has more or less congestion than the other.

We further find that the local interest in having localized controversies decided at home favors dismissal of this action.  When evaluating the public interest factors, our Court of Appeals has advised district courts to "consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum."  Lacey I, 862 F.2d at 48 (citing Van Cauwenberghe v. Biard, 486 U.S. 517 (1988)).  Here, there is no doubt that the locus of the alleged culpable conduct is Italy.

Lastly, both the United States and Italy are parties to the Montreal Convention.  The courts in both countries are equally qualified to interpret and enforce this International Treaty.

In conclusion, a trial in the United States would be oppressive and vexatious to Chimet out of all proportion to the convenience of Delta, which after all, as noted above, has a considerable presence in Italy.  Accordingly, we will grant Chimet's motion to dismiss for forum non conveniens.

                    IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF PENNSYLVANIA


DELTA AIRLINES, INC.            :        CIVIL ACTION
                                :
              v.                :
                                :
CHIMET, S.p.A.                  :        NO. 07-2898

                                ORDER

        AND NOW, this 19th day of December, 2008, for the
reasons set forth in the accompanying Memorandum, it is hereby
ORDERED that the motion of Chimet, S.p.A. to dismiss for forum
non conveniens is GRANTED.

                                BY THE COURT:


                                /s/ Harvey Bartle III
                                                      C.J.